UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

ANTHONY BODNAR,

Defendant.

Action No. 3:09-CR-163

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Anthony Bodnar's: (1) Motion to Vacate under 28 U.S.C. § 2255, (ECF No. 59); (2) Motion to Proceed *in forma pauperis* ("IFP"), (ECF No.63); (3) Motion to Suppress Government's Response, (ECF No. 69); (4) Motion to Request Status of Petitioner's § 2255 Motion, (ECF No. 73), (collectively, "Motions"). For the reasons stated below, the Court DENIES Defendant's Motions.

## BACKGROUND

On May 19, 2009, a grand jury indicted Bodnar for two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On June 1, 2009, an initial appearance was held before Magistrate Judge Dennis Dohnal and Defendant was advised of the charges, maximum penalties, and his rights.[1] After Bodnar's arrest, John Rockecharlie and D. Gregory Carr[2] entered appearances on his behalf. (ECF No. 16.) On June 8, 2009, at Bodnar's arraignment, Bodnar moved to continue his trial beyond his Speedy Trial Act cut-off date. Again, on August 20, 2009, Bodnar moved to continue trial because his forensic expert needed more time to review the Government's

---

[1] The record indicates that although Mary Maguire had filed a notice of appearance on Bodnar's behalf, at this hearing, Bodnar was represented by Amy Austin from the Federal Public Defender Office. (*See* ECF Nos. 8 & 11.)

[2] On September 2, 2009, the Court relieved Carr from the representation because he was appointed as a judge of the Chesterfield/Colonial Heights Juvenile and Domestic Relations District Court.

1

evidence and the Government signaled its intent to issue a superseding indictment. (ECF No. 22.) On September 1, 2009, the Government filed a superseding indictment charging Bodnar with two counts of receipt of child pornography and three counts of child pornography possession in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(a)(5)(B). (ECF No. 23.) At his arraignment on September 2, 2009, Bodnar pled not guilty to these charges.

On September 13, 2009, Bodnar moved to suppress photographs Bodnar's friend Karen Fugate obtained when she entered Bodnar's apartment. (ECF No. 26.) According to the motion, a detective investigating allegations against Bodnar for inappropriate contact with a nine-year-old girl discussed the investigation with Fugate. Fugate then entered Bodnar's apartment and took a photograph which depicted a child in a provocative pose. Fugate gave the photograph to the officer, who then obtained a warrant to search Bodnar's apartment. Bodnar argued that Fugate acted as a government agent when she entered Bodnar's apartment.

On October 23, 2009, the Government signaled its intent to enter evidence pursuant to *res gestae* and Federal Rules of Evidence 404(b) and 414. (ECF No. 28.) Specifically, the Government sought to admit the child molestation allegations against Bodnar and statements he made to investigators connecting those allegations to his possession of child pornography.

On November 5, 2009, the Court heard the parties' arguments on Bodnar's motion to suppress[3] and the Government's motion to enter evidence. The Court denied Bodnar's motion to suppress. The Court found that Bodnar had given Fugate a key to his apartment and, after meeting with the detective, Fugate entered his apartment on her own volition. The Court concluded, therefore, that the Government passively accepted Fugate's private conduct and did not employ her

---

[3] Bodnar's motion to suppress was originally scheduled to be heard on October 28, 2009. On Bodnar's motion for continuance, however, the Court continued the hearing on the motion to suppress because Defendant stated that Karen Fugate was a key witness who was unable to appear because of an illness. (*See* ECF No. 29.)

as its agent. (*See* Mem. Op. & O. Denying Mot. to Suppress 3, Nov. 6, 2009, ECF No. 33 (citing *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003).) The Court also partially denied the Government's motion to introduce evidence related to the molestation investigation targeting Bodnar. The Court permitted the Government to refer to the fact that Bodnar was under investigation, but prohibited it from mentioning "the specifics of the investigation[.]" (O. Denying in Part Govt.'s Mot. Introduce Evidence, Nov. 6, 2009, ECF No. 34.)

On November 9, 2009, Bodnar pled guilty before Magistrate Judge Dohnal without the benefit of a written plea agreement. According to a Statement of Facts Bodnar signed, officers from the Chesterfield County Police Department executed a search warrant at Bodnar's residence on August 7, 2008. (Statement of Facts ¶ 1, ECF No. 38.) Officers seized two computer hard drives, which collectively turned out to contain over 2300 digital pictures and videos depicting minors engaged in sexually explicit conduct. (Statement of Facts ¶¶ 1, 3.) The officers also seized eight paper photographs depicting a child engaging in sexually explicit conduct. (Statement of Facts ¶ 1.) After receiving word of his arrest, Bodnar's former employer reviewed his computer's hard drive. (Statement of Facts ¶ 2.) The review led to the employer to discover a flash drive that contained over 1000 images and 65 videos depicting minors engaged in sexually explicit conduct. (Statement of Facts ¶ 3.) Both of Bodnar's hard drives and his flash drive were manufactured outside Virginia and travelled through interstate commerce, as did the images that formed the basis of all five counts of the indictment. (Statement of Facts ¶¶ 3-4.)

On the day officers executed the warrant, Bodnar waived his *Miranda* rights and admitted to one officer that he downloaded the image files depicting child pornography and obtained the paper photographs depicting child pornography from the internet. (Statement of Facts ¶ 5.) Bodnar also admitted to downloading the images "knowingly and intentionally, not by accident or mistake, and that he knew his conduct was illegal at the time." (Statement of Facts ¶ 6.)

The Court sentenced Bodnar to a concurrent sentence of 168 months imprisonment on Counts One and Two and 120 months imprisonment on the remaining counts. The Court also ordered Bodnar to pay $1,000 each in restitution to two minor victims. Bodnar did not note an appeal to his conviction or sentence.

## PETITIONER'S STATED GROUNDS FOR RELIEF

In his § 2255 petition, Bodnar states numerous claims for relief which all lack merit. Bodnar contends that he is entitled to relief on the following grounds:

Claim 1    The Court lacked jurisdiction to impose a sentence, because Bodnar's offense did not involve interstate commerce.

Claim 2    The judgment imposed on Bodnar violates the laws of the United States because allegedly:

    a. Bodnar was not advised of his *Miranda* rights when he was taken into federal custody;

    b. Bodnar was not told why he was taken into federal custody;

    c. Bodnar never received a complaint or warrant for his arrest;

    d. Bodnar was denied adequate counsel because he was denied the opportunity to speak with his paid counsel;

    e. Bodnar was denied adequate counsel because Amy Austin, who represented him at his initial appearance, was not qualified or prepared to represent him;

    f. Three different judges presided over Bodnar's case at various stages;

    g. A Government agent, Fugate, entered and illegally searched and seized property from Bodnar's apartment without a legal search warrant, violating his Fourth Amendment rights;

    h. Bodnar's case should have been dismissed when Fugate failed to appear at the suppression hearing, and her failure to appear necessitates the conclusion that she was a Government agent; and

    i. The superseding indictment was illegal because it was filed by the Government after the "hard deadline."

Claim 3        Counsel rendered ineffective assistance:

   a. Amy Austin, Bodnar's counsel at his initial appearance, was "not qualified nor even remotely prepared" to represent Bodnar;

   b. The AUSA falsely represented to Rockecharlie, and Rockecharlie acknowledged that the Court had jurisdiction over the action;

   c. Counsel Rockecharlie failed to move for discovery even after Bodnar's request;

   d. Rockecharlie failed to move for a chain-of-custody letter regarding the digital files, although Bodnar requested it;

   e. Rockecharlie incorrectly told Bodnar he faced a statutory maximum of forty years in prison, when he actually faced a statutory maximum of twenty years in prison;

   f. Rockecharlie failed to move for dismissal after Fugate failed to appear at a scheduled suppression hearing;

   g. At the hearing on Bodnar's motion to suppress, Rockecharlie failed to ask Fugate whether she discussed searching Bodnar's residence with the investigating detective, and failed to ask the investigating detective whether he discussed searching Bodnar's residence with Fugate;

   h. Rockecharlie failed to explain that at trial, Bodnar could object to the admission of the paper photograph Fugate recovered from Bodnar's residence. Additionally, Rockecharlie told Bodnar he lacked any defense to present at trial;

   i. Rockecharlie showed Bodnar an altered video of Bodnar's interview with the arresting officer, in order to improperly persuade Bodnar to plead guilty;

   j. Rockecharlie failed to ensure that the district judge, rather than the magistrate judge, presided over his guilty plea;

   k. The probation office missed "various" deadlines in preparing Bodnar's Presentence Investigation Report (PSR), denying him adequate time to object to the PSR; and

   l. Rockecharlie improperly stated to the Court that Bodnar did not object to the PSR.

Since Bodnar proceeds *pro se*, the Court reads his petition charitably, under a less stringent standard than the Court would hold a petitioner represented by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1979). Nonetheless, Bodnar fails to provide factual elaboration for any of his claims.

5

**LEGAL STANDARD**

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. *See Hill v. United States*, 368 U.S. 424, 426–27 (1962). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999).

**DISCUSSION**

A.  <u>Procedurally Defaulted Claims</u>

As an initial matter, Claims 2 (with the exception of 2-e[4]), and 3-k are procedurally barred from review. In collateral proceedings, a petitioner may not assert claims he could have raised, but failed to raise on direct review. *Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976); *United States v. Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009). A petitioner is barred from raising any claim reviewable on appeal absent showings of cause and prejudice or actual innocence. *United States v. Frady*, 456 U.S. 152 167-68 (1982); *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Landrum*, 93 F.3d 122, 124-25 (4th Cir. 1996). In order to establish cause, the petitioner must demonstrate that something "external to the defense" prohibited him from raising the issue on appeal. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). In order to establish prejudice, the petitioner must demonstrate his actual innocence by clear and convincing evidence. *Id.*

Bodnar could have raised Claims 2 (with the exception of 2-e), and 3-k on appeal, but he did not appeal his conviction or his sentence. Bodnar does not allege any cause for failing to appeal, and

---

[4] Claim 2-e is essentially an ineffective assistance of counsel claim that is duplicated in Claim 3-a, and is addressed and dismissed *infra* Part C.

6

he does not contend that he is actually innocent of the offenses to which he pled guilty. Therefore, Claims 2 (with the exception of 2-e), and 3-k will be DISMISSED.

      B.    <u>Jurisdictional Claim—Proof of Interstate Commerce Nexus</u>

In Claim 1, Bodnar contends the Court lacked jurisdiction to find him guilty and sentence him for receiving and possessing child pornography, because his offenses did not involve interstate commerce. Title 18 U.S.C. Section 2252A(a)(2)(A) requires the government to prove that a person received child pornography "using any means or facility of interstate or foreign commerce" or "shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]" Similarly, Title 18 U.S.C. Section 2252A(a)(5)(B) requires the government to prove that a person possessed child pornography "shipped or transported using any means or facility of interstate . . . commerce or in or affecting interstate or foreign commerce by any means, including by computer," or "that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."

The government may prove the interstate commerce element either by demonstrating that the defendant received or possessed images transmitted through the internet, or by demonstrating that the child pornography was produced using materials that had traveled through interstate commerce. *See, e.g., United States v. Koegel*, 2011 WL 1441851, at *8 (E.D. Va. Apr. 11, 2011); *United States v. Caley*, 355 Fed App'x 760, 761 (4th Cir. 2009); *United States v. Zimmerman*, 529 F.Supp.2d 778, 786 (S.D. Tex. 2007); *United States v. Richards*, 401 F.Supp.2d 834, 843 (M.D. Tenn. 2005). The government need not prove that the defendant knew the images, or the materials used to produce the images, travelled through interstate commerce. *See United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006).

Here, the Government had sufficient evidence to prove the jurisdictional element required for Bodnar's conviction. Bodnar pled guilty to each count in the indictment, thereby admitting the

facts underlying each element of the offense. *See Meyer v. Branker*, 506 F.3d 358, 367 (4th Cir. 2007) ("'[A] defendant's guilty plea itself serves as a 'conviction,' supplying 'both evidence and verdict.'" (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 243 n.4 (1969))). In the Statement of Facts he signed before pleading guilty, Bodnar admitted that the two hard drives and the flash drive authorities discovered were manufactured outside Virginia and traveled in interstate or foreign commerce. (Statement of Facts ¶ 3.) Bodnar also stipulated that he downloaded the two images forming the bases of Counts One and Two from the internet, leading to the conclusion that those images traveled through interstate or foreign commerce. (Statement of Facts ¶ 4.) Additionally, Bodnar admitted telling his arresting officer that he obtained the paper photographs officers recovered from the internet, and that he downloaded the image files found on his computer from the internet. (Statement of Facts ¶ 5.) Finally, Rockecharlie confirms in an affidavit that some of the photographs found in Bodnar's possession portrayed known victims who lived outside Virginia, leading to the conclusion that the photographs traveled in interstate commerce. (Rockecharlie Aff. 1, Gov't Resp. Ex. 1, ECF No. 66.) Additionally, in his plea colloquy in front of the magistrate judge, Bodnar stipulated that the information in the Statement of Facts, including the fact that two hard drives were manufactured outside Virginia and traveled through interstate commerce, is true and accurate, and the Government could prove each element of his charge if the matter proceeded to trial. (Pl. Hr'g Tr. 12 & 14.) Accordingly, Claim 1 lacks merit and is DISMISSED.

    C.  <u>Ineffective Assistance of Counsel</u>

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d

8

577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A petitioner's assertion that but for counsel's alleged error he would have pled not guilty, is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry," *see Hooper v. Garraghty,* 845 F.2d 471, 475 (4th Cir. 1988), "and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer*, 506 F.3d at 369 (quoting *Hill*, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *Id.* at 369-70. Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Generally, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005).

In his petition, Bodnar contends his attorney provided him ineffective assistance in

9

numerous ways. In his Rule 11 colloquy, however, Bodnar stated to the Court, under oath, that he had sufficient opportunity to discuss with counsel the indictment, the possibilities for his sentence with his attorney, and that he understood each charge and potential penalties. (Plea Hr'g Tr. 6-8.) Additionally, Bodnar agreed that he was satisfied with the services his counsel rendered, and that counsel gave him enough information for him to make up his own mind as to what to do. (Plea Hr'g 8:17-21.) Bodnar also demonstrated that he understood his right not to plead guilty and to compel the Government to present its evidence at trial. (Plea Hr'g Tr. 9-10.) Furthermore, Bodnar confirmed that he understood whatever his counsel may have said about his sentence was only a "prediction" and "not a guarantee" of what would actually happen. (Plea Hr'g Tr. 11.) In light of Bodnar's statements in his Rule 11 colloquy, along with Rockecharlie's statements at the colloquy and evidence the Government has provided, Bodnar's complaints about counsel's performance directly contradict his sworn assurances during his Rule 11 proceedings and therefore are palpably incredible. Therefore, for these reasons, and the additional reasons stated below, the Court DISMISSES Defendant's ineffective assistance of counsel claim in its entirety.

      i. ***Bodnar fails to show prejudice in the alleged ineffective assistance of Amy Austin***

In Claims 2-e and 3-a, Bodnar contends Amy Austin was deficient in her representation at Bodnar's initial appearance.[5] Bodnar argues Austin was "not qualified nor even remotely prepared" to represent him. (Attach. III, Mot. to Vacate.) Even assuming *arguendo* the representation of Austin, an attorney with the Federal Public Defender's Office, was deficient, Bodnar does not explain how the supposed deficiency prejudiced him. Austin represented Bodnar at his initial appearance; thus, his right to counsel during that stage was vindicated. *See* Fed. R. Crim. P. 44(a). Additionally, Bodnar does not contend that he was denied information about his charges, access to counsel, the

---

[5] As stated in *supra* note 1, Mary Maguire filed a notice of appearance, but instead, Amy Austin represented Bodnar at the initial appearance hearing.

circumstances to which he was entitled to pretrial release, or his right not to make a statement. *See* Fed. R. Crim. P. 5(d). Therefore, Bodnar did not suffer prejudice as a result of any problems with his counsel's representation at his initial appearance. *Strickland*, 466 U.S. at 697. Accordingly, Claims 2-e and 3-a will be DISMISSED.

> ii. ***Several claims of Rockecharlie's ineffective assistance are built on fact assertions contradicted by the record.***

Several of Bodnar's claims are flatly controverted by the record. In Claim 3-b, Bodnar contends that the AUSA falsely represented to Rockecharlie that the Court had jurisdiction and Rockecharlie acknowledged the Court's jurisdiction. As explained *supra* Part B, the Court had jurisdiction over the action. Thus, Defendant fails to show any deficiency or prejudice in counsel's acknowledgment of the Court's jurisdiction. Accordingly, Claim 3-b will be DISMISSED.

In Claim 3-c, Bodnar contends Rockecharlie failed to move for discovery pursuant to Bodnar's request. But on November 5, 2009, the Court entered an Agreed Discovery Order permitting Rockecharlie to inspect, *inter alia*, any recorded statements Bodnar made to investigators and any documents or date in the Government's possession. (*See* Agreed Discovery Order, ECF No. 35.) Pursuant to that order, Rockecharlie visited FBI headquarters "on multiple occasions," remained for over two hours on each occasion, and reviewed the photographs in question. (Rockecharlie Aff. 3.) In Claim 3-d, Bodnar claims Rockecharlie improperly failed to request a chain-of-custody letter regarding the photographs, suggesting the Government may not have been able to prove the chain of custody of the photographs. During his examinations of the photographs, though, Rockecharlie came away with "no doubt" that the Government could establish a chain of custody "for all the evidence in question." (Rockecharlie Aff. 3.) Given these circumstances, Bodnar fails to demonstrate any deficiency or prejudice with respect to counsels alleged omissions in Claims 3-c and 3-d. Accordingly, Claims 3-c and 3-d will be DISMISSED.

In Claim 3-e, Bodnar alleges counsel told Bodnar that he faced a statutory maximum of forty

11

years in prison when he actually faced a statutory maximum of twenty years in prison. Bodnar faced a statutory maximum of twenty years in prison on each of Counts One and Two. The probation officer recommended a sentence between 235 and 240 months on each of Counts One and Two and a total punishment between 235 and 293 months on all five counts. (*See* PSR ¶ 89.) According to Rockecharlie, counsel advised Bodnar that the Court could, if it chose, sentence Bodnar consecutively on Counts One and Two for a sentence of forty years imprisonment. (Rockecharlie Aff. 3.) Therefore, Rockecharlie properly advised Bodnar of his potential sentencing exposure, such that his assistance was not ineffective in this area. Because Bodnar fails to demonstrate deficiency on the part of counsel, Claim 3-e will be DISMISSED.

In Claim 3-g, Bodnar contends Rockecharlie failed to ask Fugate at the Court's suppression hearing whether the detective investigating Bodnar asked her to enter Bodnar's apartment, and that Rockecharlie failed to ask the detective whether he requested the same of Fugate. A cursory review of the record, however, discloses that Rockecharlie questioned Fugate and the Detective Wes Fertig extensively about the matter (Suppression Hr'g Tr. 5-10, 3-18, ECF No. 60.) Bodnar complains that Rockecharlie did not "directly" ask both witnesses whether the detective asked Fugate to enter his apartment. However, the record is clear that Rockecharlie asked Fugate the question in plain terms.[6]

---

[6] At the suppression hearing, Rockecharlie and Fugate conducted the following colloquy regarding a phone conversation that occurred between Fugate and Detective Fertig on July 15, 2008:

> Q: Did [Detective Fertig] ask you to go look at Mr. Bodnar's apartment?
> A: No, he did not.
> Q: Did he suggest to you that you should go into Mr. Bodnar's apartment?
> A: He never mentioned anything like that.
> * * * * *
> Q: Did Detective Fertig make any comments about how it would be beneficial to the police department's investigation if you were to go in there and look around?
> A: No, sir.
> Q: He never gave you any indication whatsoever that you should go into the apartment?
> A: Absolutely not.

(Attach. III, Mot. to Vacate, ECF No. 59.) The record is equally clear that he asked Detective Fertig the same.[7] Therefore, there is no evidence to support Bodnar's claim that counsel failed to vigorously defend Bodnar in his motion to suppress the Government's evidence. Accordingly, Claim 3-g will be DISMISSED.

In Claim 3-j, Bodnar contends Rockecharlie failed to ensure that the district judge, rather than the magistrate judge, presided over his guilty plea. Bodnar was entitled to have a district judge conduct his plea colloquy, *see* Fed. R. Crim. P. 11, but he waived that right. On November 9, 2009, Bodnar signed a waiver entitled, "Waiver of Right to Rule 11 Proceedings Before a United States District Judge." (*See* Rule 11 Waiver, ECF No. 37.) The waiver states

> I understand that I have a right to have a United States District Judge conduct the hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure to determine that my pleas of guilty to the charges in the indictment are knowing and voluntarily entered, but I desire to waive that right and I consent to having a United States Magistrate Judge conduct the hearing, and further consent to having the Magistrate Judge accept my guilty pleas.

---

> \* \* \* \* \*
> Q: So you did this all on your own initiative?
> A: Yes, sir.
> Q: No one told you to do it?
> A: No.
> Q: No one suggested it to you?
> A: I never discussed it with friends or anybody.
> Q: Nobody advised you of the benefits of it?
> A: Not a soul.

(Suppression Hr'g Tr. 8:7-11, 8:20-9:1, 10:6-13.)

[7] At the suppression hearing, Rockecharlie and Fertig conducted the following colloquy regarding a phone conversation that occurred between Fugate and Detective Fertig on July 15, 2008:

> Q: In that first conversation, did you ever suggest to her that she should go into Mr. Bodnar's apartment?
> A: No.
> Q: Did you ever ask her to go into the apartment?
> A: No.

(Suppression Hr'g Tr. 14:4-8.)

(Rule 11 Waiver 1.) Bodnar does not allege he signed he waiver under duress or that his signature is fraudulent. Because Bodnar fails to demonstrate deficiency or prejudice, Claim 3-j is DISMISSED.

> iii. **Several claims of Rockecharlie's ineffective assistance contest tactical decisions of counsel that are unchallengeable under Strickland.**

Several of Bodnar's claims relate to tactical decisions counsel made in the course of his proceedings. Tactical decisions by counsel made after counsel's "thorough investigation of law and facts relevant to plausible options" are "virtually unchallengeable" under *Strickland*. 466 U.S. at 690. Competent counsel need not be "a flawless tactician," so the Court should not fault counsel "for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 131 S.Ct. 770, 791 (2011). In deciding whether to pursue a particular line of defense, counsel is under a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

A court must assess a counsel's decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The court must make "every effort to avoid the distorting effects of hindsight," *Strickland,* 466 U.S. at 689, and evaluate counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances[.]" *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986).

Again, in his Rule 11 colloquy, Bodnar expressed his satisfaction with Rockecharlie's representation in all aspects of his case. (Pl. Hr'g Tr. 8.) Nonetheless, in Claim 3-f, Bodnar contends that Rockecharlie should have moved for dismissal after Fugate failed to show up for the originally-scheduled suppression hearing. According to Bodnar, Fugate's failure to attend the hearing demonstrates that she was acting as a government agent when she entered Bodnar's residence. This argument is incomprehensible. Fugate attended the next hearing and testified extensively, leading the Court to conclude easily that Fugate acted independently of police advice. Given that no evidence

14

suggests that Fugate entered Bodnar's residence on the Government's behalf, Rockecharlie reasonably declined to move for dismissal based on Fugate's absence from the first suppression hearing. Claim 3-f will be DISMISSED.

In Claim 3-h, Bodnar contends Rockecharlie failed to explain to Bodnar that Bodnar could object to admission of the paper photograph Fugate recovered from Bodnar's residence during the trial phase. If Bodnar argues that he could have objected at trial to the photograph's admission on Fourth Amendment grounds, he is incorrect. After the parties litigated the question of Fugate's agency upon entering Bodnar's residence, Bodnar could have challenged the photograph's admission only on appeal. Bodnar does not state any other basis on which he would have objected to admission of the photograph. The photograph was obviously relevant to Bodnar's guilt or innocence. *See* Fed. R. Evid. 402. Bodnar could have challenged the photograph's authenticity, *see* Fed. R. Evid. 901, but Fugate's testimony and the Government's proof of a chain of custody over the photograph would have authenticated the photograph. Rockecharlie could have pressed Fugate and questioned her credibility at trial, but it was not unreasonable for Rockecharlie not to suggest that strategy in light of the extensive testimony Fugate gave at the suppression hearing. Given all the circumstances surrounding Fugate's testimony and the photograph she recovered, Rockecharlie reasonably declined to challenge the testimony or evidence at trial. *Strickland*, 466 U.S. at 697.

Also in Claim 3-h, Bodnar asserts Rockecharlie unreasonably advised the petitioner that he had no defense at trial. After Bodnar's arrest, during an interview with Detective Fertig, Bodnar admitted to downloading child pornography images to his hard drive and told the detective the internet sites from which he downloaded the images. (Suppression Hr'g Tr. 17:10-24.) Bodnar later admitted to Rockecharlie that he downloaded the images. (Rockecharlie Aff. 3.) Bodnar signed a statement of facts in which he admitted downloading thousands of child pornography images to two hard drives and a flash drive. (Statement of Facts ¶¶ 3-5.) Therefore, Rockecharlie reasonably

15

advised Bodnar that Bodnar lacked a viable defense and pleading guilty was a wise option. Because Bodnar fails to demonstrate deficiency or prejudice, Claim 3-h will be DISMISSED.

In Claim 3-i, Bodnar contends that Rockecharlie unreasonably showed Bodnar an altered video recording of Bodnar's confession to Detective Fertig. He argues Rockecharlie unreasonably suggested he plead guilty on the basis of the video. Prior to Bodnar's plea, Bodnar claimed the recording was altered. On the basis of that claim, Rockecharlie hired an expert to determine whether the recording was altered. The expert concluded the recording was not altered in any way. (Rockecharlie Aff. 4.) Additionally, as explained above, Bodnar signed a statement of facts admitting the charges and further admitted his guilt during his Rule 11 colloquy. Therefore, Rockecharlie did not err in declining to challenge the recording's authenticity or using it as a basis for advising Bodnar to plead guilty. Claim 3-i will be DISMISSED.

In Claim 3-l, Bodnar contends Rockecharlie should have objected to certain aspects of the PSR. Bodnar does not specify the objection he thinks Rockecharlie should have made. Additionally, it is clear that Rockecharlie made a spirited defense for Bodnar at sentencing. Counsel prepared an elaborate sentencing position. (Def.'s Sentencing Position, ECF No. 43.) He argued that the child pornography guidelines lack empirical support and urged the Court to follow other courts in given them less deference than other guidelines. (*See* Def.'s Sentencing Position 5-13.) In response to the probation office's recommendation of a sentence between 235 and 293 months imprisonment, Rockecharlie argued that a sentence of 120 to 135 months imprisonment was sufficient would satisfy the § 3553(a) factors. And in response to the Government's request for victim restitution, Rockecharlie opposed the request, and alternatively urged the Court to fashion a restitution award proportional to the amount of harm Bodnar caused the victim. (*See* Def.'s Sentencing Position 21-27.) The Court ultimately sentenced Bodnar to a concurrent term of 168 months in prison and ordered him to pay $1,000 each to two known victims in restitution. Bodnar fails to demonstrate any

16

reasonable probability that any objection from counsel would have resulted in a lesser sentence. In light of Rockecharlie's defense conduct at sentencing and Bodnar's failure to specify the objections he wanted counsel to make, the Court finds Claim 3-l futile. Accordingly, Claim 3-l is DISMISSED.

For all these reasons, the Court DENIES Petitioner's request and DISMISSES his petition.

## OTHER PENDING MOTIONS

A. Motion To Proceed *In Forma Pauperis*

On January 25, 2011, after Bodnar filed his § 2255 Petition, he filed a Motion to Proceed *in forma pauperis* ("IFP"). It is unclear why Bodnar filed this Motion to Proceed IFP, however, it may reasonably be interpreted that Bodnar was under the mistaken impression that he needed to pay certain fees in order for his petition to be filed. There are no fees associated with filing a § 2255 petition. Moreover, the Petition has proceeded without the need for Bodnar to pay any filing fees. Therefore, the Court DENIES WITHOUT PREJUDICE Bodnar's IFP request.

B. Motion to Suppress the Government's Response

Bodnar argues that the Government's Response should be suppressed on the basis that it was untimely filed. On January 18, 2011, after Bodnar filed his petition, the Court ordered service on the Government. The Government was served on January 19, 2011, and had 45 days to respond to Bodnar's § 2255 Petition. The 45th day fell on Saturday, March 5, 2011, and the Government filed its Response on March 7, 2011. Pursuant to Rule 6 of the Federal Rules of Civil Procedure, in computing time, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Thus, because the last day of the 45-day period was a Saturday, the Government's Response was timely filed on Monday, March 7, 2011. Therefore, Bodnar's Motion to Suppress the Government's Response is DENIED.

C. Motion to Request Status of Petitioner's Motion to Vacate under 28 U.S.C. § 2255

On March 22, 2012, Bodnar filed a Motion to Request the Status of Petitioner's Motion to

Vacate. (ECF No. 73.) For the reasons and recommendations detailed above, Bodnar's § 2255 Petition is DENIED. As a result of this ruling, the Bodnar's request for a status update is rendered moot. Accordingly, the Court DENIES AS MOOT Bodnar's request for a status update.

## CONCLUSION

For the reasons stated above, the Court: (1) DISMISSES Bodnar's Claims; (2) DENIES Bodnar's 28 U.S.C. § 2255 Motion and DISMISSES his Petition; (3) DENIES WITHOUT PREJUDICE Bodnar's Request to Proceed IFP; (4) DENIES Bodnar's Motion to Suppress the Government's Response; and (5) DENIES AS MOOT Bodnar's Motion to Request Status of Petitioner's § 2255 Motion. Furthermore, the Court DENIES Bodnar a certificate of appealability ("COA"). An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). For the reasons stated more fully above, no law or evidence suggests that Bodnar is entitled to further consideration in this matter.

Let the Clerk send a copy of this Memorandum Opinion to the United States, Bodnar, and other counsel of record.

An appropriate Order will accompany.

>             /s/
> James R. Spencer
> United States District Judge

ENTERED this __6th__ day of April 2012.